## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| John Meiners, on behalf of a class of all persons similarly situated, and on behalf of the Wells Fargo & Company 401(k) Plan, | Court File No. _____ |
| Plaintiffs, | |
| v. | **CLASS ACTION COMPLAINT** |
| Wells Fargo & Company; Human Resources Committee of the Wells Fargo Board of Directors; Wells Fargo Employee Benefits Review Committee; Hope Hardison; Justin Thornton; Howard Atkins; Patricia Callahan; Michael Heid; Timothy Sloan; John Stumpf; Lloyd Dean; John Chen; Susan Engel; Donald James; and Stephen Sanger, | |
| Defendants. | |

## I.    INTRODUCTION

1.    Plaintiff John Meiners brings this action as a representative of the class described herein and the Wells Fargo & Company 401(k) Plan (the "Plan"), under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.* ("ERISA").  Plaintiff brings this action against the Plan sponsor, Wells Fargo & Company ("Wells Fargo"), and Plan fiduciaries, including the Wells Fargo Employee Benefit Review Committee and its members (the "Benefit Committee") and the Human

Resources Committee of the Wells Fargo Board of Directors ("HR Committee"), for violating their duties of loyalty and prudence in investing Plan assets.

2.      Specifically, since at least 2010, Defendants have engaged in a practice of self-dealing and imprudent investing of Plan assets by funneling billions of dollars of those assets into Wells Fargo's own proprietary funds.  Specifically, the Benefit Committee, with the knowledge and participation of Wells Fargo, the HR Committee, and the other fiduciary Defendants, selected as investments a class of mutual funds—known as target date funds—and designed and maintained a system to maximize the amount of Plan assets invested into those funds.  Defendants did so by, among other things, (1) defaulting certain participant contributions into the Wells Fargo target date funds, and (2) encouraging participants to purchase the funds through an "easy" and "quick" enrollment feature, where participants would, with a check of a box, dedicate all their future contributions into the Wells Fargo target date funds.

3.      For the entire class period described herein, the Wells Fargo target date funds cost on average over 2.5 times more than comparable target date funds while, at the same time, substantially and consistently underperforming those comparable funds.  The substantial cost inflation was due, in part, to the fact that, unlike the comparable funds, Wells Fargo double charged for its target date funds—charging fees for both (1) managing the target date funds themselves, and (2) managing the index funds underlying the target date funds.

4.      This intentional funneling of participants into the target date funds not only generated substantial revenues for Wells Fargo, but, with Plan assets constituting more

than one quarter of total assets in the funds, it provided critical seed money that kept the funds afloat by boosting market share.

5.      Thus, Defendants have, among other things, violated their fiduciary duties of loyalty and prudence and/or knowingly participated in such breaches to the detriment of the Plan, and are liable to the Plan for damages, equitable relief, and all other remedies available under ERISA.

## II.      JURISDICTION AND VENUE

6.      Plaintiff brings this action under 29 U.S.C. § 1132(a)(2) and (3), which provide that participants in an employee retirement plan may pursue a civil action on behalf of the plan to remedy breaches of fiduciary duties and other prohibited conduct, and to obtain monetary and appropriate equitable relief as set forth in 29 U.S.C. §§ 1109 and 1132.

7.      This case presents a federal question under ERISA, and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1)(F).

8.      Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b) because this is the district where the plan is administered and where breaches of fiduciary duties giving rise to this action occurred.

## III.      THE PARTIES

### A.      Plaintiff

9.      Plaintiff John Meiners resides in St. Louis, Missouri, and has been a participant in the Plan from at least 2010 to present.  Meiners' contributions were

invested in a Wells Fargo target date fund, and he suffered financial harm because of Defendants' unlawful conduct.

**B.**    **The Plan**

10.    With over 350,000 participants and approximately $35 billion in assets, the Plan is one of the largest retirement plans in the country.  The Plan is what is known as a defined-contribution or 401(k) plan, a type of employee retirement plan in which employees invest a percentage of their earnings on a pre-tax basis.  More specifically, the Plan is an "employee pension benefit plan" within the meaning of 29 U.S.C. § 1002(2)(A), a "defined contribution plan" within the meaning of 29 U.S.C. § 1002(34), and a qualified plan under 26 U.S.C. § 401.  The Plan was established in 1953 and was restated multiple times, including 2010.  It covers all eligible employees of Wells Fargo and its subsidiaries within the United States.

**C.**    **Defendants**

11.    Defendant Wells Fargo is an international banking and financial services company headquartered in San Francisco, California.  Wells Fargo is the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16)(B), is a participating employer in the Plan, and provides the funding for the Plan.

12.    Defendant Hope Hardison is Wells Fargo's Director of Human Resources and a named fiduciary under the Plan within the meaning of ERISA section 402, with the authority to control or manage the operation and administration of the Plan.

13.     Defendant Justin Thornton is Wells Fargo's Director of Compensation and Benefits and also a named fiduciary under the Plan within the meaning of ERISA section 402, with the authority to control or manage the operation and administration of the Plan.

14.     Defendant Benefit Committee is the committee responsible for choosing and periodically reviewing and monitoring the Plan's investment options.  The Benefit Committee is comprised of Wells Fargo's senior management.  The Benefit Committee is a named fiduciary under the Plan within the meaning of ERISA section 402, with authority to control or manage the operation and administration of the Plan. The duties of the Benefit Committee include selecting, monitoring, and eliminating the Plan's investments.

15.     During the relevant class period, the Benefit Committee members included the following individual Defendants:

- Defendant Hardison;

- Defendant Thornton;

- Defendant Howard Atkins, Wells Fargo's former Chief Financial Officer, who, upon information and belief, was a committee member from the beginning of the class period through February 2011;

- Defendant Patricia Callahan, Wells Fargo's former Chief Administrative Officer, who, upon information and belief, was a committee member from the beginning of the class period through June 2015;

- Defendant Timothy Sloan, the current Wells Fargo President and CEO, who, upon information and belief, was a committee member from the beginning of the class period through present;

- Defendant Michael Heid, Wells Fargo's Head of Home Lending, who, upon information and belief, was a committee member from the beginning of the class period through September 2015; and

- Defendant John Stumpf, Wells Fargo's former President, CEO, and Chairman of the Board, who, upon information and belief, was a committee member from the beginning of the class period through October 2016.

16.     The identity of the other Benefit Committee members is uniquely in Defendants' possession and are not currently known to Plaintiff.

17.     Defendant HR Committee was, for the majority of the class period, a named fiduciary under the Plan within the meaning of ERISA section 402, with the authority to appoint individuals to serve on the Benefit Committee and the authority to amend the Plan.   The HR Committee is comprised of Defendants Lloyd Dean, John Chen, Susan Engel, Donald James, and Stephen Sanger.

18.     To the extent the named Defendants delegated their fiduciary responsibilities, any individual or entity to whom such authority was delegated are also Plan fiduciaries pursuant to 29 U.S.C. § 1002(21)(A) and 1105(c)(2).   The identify of any such individuals are uniquely in Defendants' possession, and thus not currently known to Plaintiff.

## IV.     GENERAL FACTUAL ALLEGATIONS

## A.     The Plan Investments and the Wells Fargo TDFs

19.     At all relevant times, the Plan offered a limited menu of 26 to 27 investment options to Plan participants, approximately 16 of which were proprietary funds managed by Wells Fargo or its subsidiaries.   Twelve of these Wells Fargo funds are

the funds at issue here—a family of funds called Wells Fargo Dow Jones Target Date

Funds ("Wells Fargo TDFs") managed by a wholly-owned Wells Fargo subsidiary.

20.     Target date funds, also known as lifecycle funds, are mutual funds that are

typically used to plan for retirement or other long-term savings goals.  Target date funds

automatically shift the asset mix of stocks, bonds, and cash equivalents in the fund

portfolio based on the targeted retirement date.  For example, funds that project a

retirement date far into the future will typically have an initial allocation heavily

weighted with equity investments, but, as time goes on, will shift the asset allocation

towards fixed income and cash equivalents.  The suite of Wells Fargo TDFs is based on

target retirement dates spanning from 2010 to 2060 in five year increments, in addition to

a fund with a target date of current day.

21.     The Wells Fargo TDFs employ what is known as a passive index-based

strategy.  The stated objective of the funds is to approximate the holdings and weightings

of the Dow Jones Target Date indices for each corresponding target year.  The Dow Jones

Target Date indices are proprietary indices developed by S&P Dow Jones Indices, LLC,

which provide benchmarks for target date funds.  Each Dow Jones Target Date index is a

composite of subindices representing three major asset classes—stocks, bonds, and cash.

22.     The Wells Fargo TDFs approximate the holdings and weightings of the

Dow Jones Target Date indices by investing exclusively in three proprietary Wells Fargo

index funds: (1) the Wells Fargo Diversified Stock Portfolio, (2) the Wells Fargo

Diversified Fixed Income Portfolio, and (3) the Wells Fargo Short Term Investment

Portfolio. These Wells Fargo index funds (called the "master portfolios") attempt to approximate the equity, bond, and cash subindices of the Dow Jones Target Date indexes.

23.    The underlying strategy of the Wells Fargo TDFs, which is to approximate indexes developed by others, is a passive investment strategy. Funds with passive strategies generally charge less than funds with active strategies, where, rather than relying on an index, the managers use significant amounts of discretion and analysis to select investments to try to beat the markets.

24.    The expenses associated with the Wells Fargo TDFs include a management fee component and an administrative fee component. There is also a charge related to the management of the underlying Wells Fargo index funds comprising the Wells Fargo TDFs. Therefore, Wells Fargo effectively double charges for the Wells Fargo TDFs— once for the services for the target date fund, and once for the services associated with the underlying index funds.

**B.     Defendants Funneled Plan Assets into the Wells Fargo TDFs Despite Cheaper and Better-Performing Alternatives**

25.    During the entirety of the class period (as defined in paragraph 43 below), the Benefit Committee, with the full knowledge and participation of the other Defendants, selected Wells Fargo TDFs for the Plan and failed to eliminate them.

26.    In so doing, the Benefit Committee and other Defendants knew or should have known that the Wells Fargo TDFs were substantially more expensive and worse performing than comparable funds.

27.     The comparable funds include, for example, the Vanguard Target

Retirement Funds ("Vanguard Funds") managed by the Vanguard Group, Inc., and the

Fidelity Freedom Index Funds ("Fidelity Funds") managed by Fidelity Investments.  Like

the Wells Fargo TDFs, these funds are target date retirement index funds which employ a

passive management strategy based on indexes.  For the entire class period, the net

expense ratios of the Wells Fargo TDFs were at least 2.5 times more than the net expense

ratios of the Vanguard and Fidelity Funds for comparable share classes.

28.     The following is a comparison of the annual expense ratios of the funds

during the class period:



29.     The disparity in cost is due in part to the fact that the Vanguard and Fidelity

Funds, unlike the Wells Fargo TDFs, do not double charge for management fees.  That is,

Vanguard and Fidelity charged no fees for managing the target date funds themselves,

and only charged fees for managing the index funds underlying the target date funds.

30.     Not only were the alternative funds far cheaper than the Wells Fargo TDFs, they also consistently outperformed them.  For example, as of June 30, 2011, a total of approximately $3.2 billion of Plan assets were invested in the Wells Fargo TDFs, and, as of June 30, 2016, the weighted average annual return of those investments was 5.44 percent.  Had the Benefit Committee eliminated the conflict of interests and instead selected the Vanguard Funds, the weighted average return over the same period would have been 7.02 percent.  This amounts to a difference of 10.21 percent in total returns over that five-year period, or $323 million.

31.     The underperformance of the Wells Fargo TDFs was apparent year after year during the class period.  For example, from 2011 to present, the weighted average returns of the Wells Fargo TDFs consistently underperformed the same weighted average returns of the Vanguard Funds on a one-, three-, and five-year trailing basis as follows:

| *Weighted Average Returns as of 6/30/2011* | | |
|---|---|---|
| | 1 Year | 3 year | 5 year |
| *Vanguard* | 23.64 | 6.71 | 3.72 |
| *Wells Fargo* | 20.76 | 6.48 | 2.52 |

| *Weighted Average Returns as of 6/30/2012* | | |
|---|---|---|
| | 1 Year | 3 year | 5 year |
| *Vanguard* | 1.22 | 12.41 | 1.47 |
| *Wells Fargo* | 0.31 | 11.12 | 1.87 |

| **Weighted Average Returns as of 6/30/2013** | | |
| --- | --- | --- |
| | 1 Year | 3 year | 5 year |
| *Vanguard* | 12.92 | 12.21 | 4.55 |
| *Wells Fargo* | 9.69 | 9.95 | 4.10 |

| **Weighted Average Returns as of 6/30/2014** | | |
| --- | --- | --- |
| | 1 Year | 3 year | 5 year |
| *Vanguard* | 18.61 | 10.68 | 13.85 |
| *Wells Fargo* | 15.93 | 8.35 | 12.06 |

| **Weighted Average Returns as of 6/30/2015** | | |
| --- | --- | --- |
| | 1 Year | 3 year | 5 year |
| *Vanguard* | 3.08 | 11.72 | 11.69 |
| *Wells Fargo* | 0.91 | 9.17 | 9.52 |

| **Weighted Average Returns as of 6/30/2016** | | |
| --- | --- | --- |
| | 1 Year | 3 year | 5 year |
| *Vanguard* | 0.15 | 7.08 | 7.05 |
| *Wells Fargo* | 1.20 | 5.92 | 5.44 |

32.    Lower costs and better performance has earned the Vanguard Funds, during the entire class period, the highest ratings from leading third-party analysts such as Morningstar and Lipper, while during the same period, the Wells Fargo TDFs have been consistently downgraded to neutral or, in several cases, negative ratings.

33.     Not only did the Benefit Committee select the costlier and worse-performing Wells Fargo TDFs, Defendants implemented a system designed to maximize the amount of Plan assets invested in the funds.

34.     One component of the system was designating the Wells Fargo TDFs as the default funds into which participants' contributions were invested.  Thus, for those participants who enrolled in the Plan without selecting an investment option (a relatively common occurrence), their contributions were automatically invested into the Wells TDF that matched their estimated retirement year based on age.  The assets defaulted into the Wells Fargo TDFs included employee pre-tax salary contributions, monies rolled over into the Plan from other retirement accounts, and repayments of any loans taken against a participant's account.

35.     In addition to defaulting participants into the Wells Fargo TDFs, the Plan offered an "Easy Enroll" and "Quick Enroll" feature, which was prominently offered in the summary plan documents provided to the Plan participants throughout the class period.  Under the current Easy Enroll feature, participants may, with the check of a box, automatically commit six percent of their pre-tax salary to the Wells Fargo TDF that matches their estimated retirement year based on age, with automatic one percent increases each year thereafter until their contribution reaches 12 percent.

36.     This system of funneling members into the Wells Fargo TDFs has helped put over $3 billion in Plan assets into the Wells Fargo TDFs, which has been an important source of seed money for the funds.  Indeed, investments from Plan participants constitute approximately 28 percent of the total assets in the Wells Fargo

TDFs.  Further, an additional 29 percent of the assets in the Wells Fargo TDFs come from other Wells Fargo-directed activity, including third-party 401(k) plans where Wells Fargo serves as a third-party administrator.  Thus, Wells Fargo-directed activity accounts for approximately 59 percent of the assets in the Wells Fargo TDFs.

### C. Defendants Failed to Properly Monitor the Plan

37.     During the entirety of the class period, the Benefit Committee was duty bound by law and Wells Fargo's internal policies to periodically monitor the Plan investments to ensure, among other things, that they were prudent and not tainted by a conflict of interests.  Upon information and belief, Wells Fargo's internal policies required that these reviews occur at least quarterly.

38.     During the entire class period, the Benefit Committee knew or should have known that (1) the Wells Fargo TDFs were selected based on a conflict of interests, (2) the Plan was designed to funnel participant money into the Wells Fargo TDFs, and (3) there were substantially cheaper and better-performing comparable funds available. Despite this actual or constructive knowledge, the Benefit Committee failed to remove the Wells Fargo TDFs from the Plan, allowing the conflict of interests to persist to the substantial detriment of the Plan participants.

39.     Thus, the Benefit Committee, driven by its desire to generate fees for Wells Fargo and seed the poor-performing Wells Fargo TDFs, engaged in a deeply flawed monitoring process and failed in its monitoring duties.  The flaws in the process included:

- Failing to consider Defendants' conflict of interests;

- Failing to put the interests of the Plan participants above those of Defendants in making investment decisions;

- Failing to consider comparable funds that were cheaper and better-performing than the Wells Fargo TDFs; and

- Failing to consider the flawed design that funneled Plan assets into the imprudent Wells Fargo TDFs.

40.     Wells Fargo was fully aware of, and participated in, the flawed Plan design and monitoring process.  Indeed, Wells Fargo senior executives, including those sitting on the Benefit Committee, directed the committee to put Wells Fargo's interests ahead of the Plan by selecting and failing to eliminate the Wells Fargo TDFs when superior alternative funds existed, and failed to correct the flawed Plan structure that funneled Plan assets into the Wells Fargo funds.  The HR Committee and other fiduciary Defendants, including Hardison and Thornton, also knowingly participated in the breaches by, among other things, failing to remove members of the Benefit Committee who it knew were putting Wells Fargo's interests before those of the Plan participants, and failing to correct the flawed Plan design that funneled plan assets into the Wells Fargo TDFs.

41.     Plaintiff and the other class members, however, were not aware of the flawed monitoring process, nor could they have been, as such knowledge is uniquely in Defendants' possession.  They did not know that the Benefit Committee, with the knowledge and participation of the other Defendants, put Defendants' own interests ahead of the Plan participants to their substantial detriment.  They did not know that the Wells Fargo TDFs cost over 2.5 times more than comparable funds.  They did not know

that in addition to being cheaper, these comparable funds outperformed the Wells Fargo

TDFs.  And they did not know that Defendants used Plan assets to seed the Wells Fargo

TDFs, with Plan assets comprising over 25 percent of the total assets in the funds.

## V.     CLASS ACTION ALLEGATIONS

42.     29 U.S.C. § 1132(a)(2) authorizes any participant or beneficiary of the Plan

to bring an action individually on behalf of the Plan to recover for the Plan the remedies

provided by 29 U.S.C. § 1109(a).  Plaintiff seeks certification of this action as a class

action pursuant to this statutory provision and Rule 23 of the Federal Rules of Civil

Procedure.

43.     Plaintiff brings this action on behalf of a class defined as:

> Participants in the Wells Fargo & Company 401(k) Plan whose
> Plan accounts had a balance in any one of the following funds
> from November 22, 2010 to the present (the "class period"): Wells
> Fargo Dow Jones Target Today Fund, Wells Fargo Dow Jones
> Target 2010 Fund, Wells Fargo Dow Jones Target 2015 Fund,
> Wells Fargo Dow Jones Target 2020 Fund, Wells Fargo Dow
> Jones Target 2025 Fund, Wells Fargo Dow Jones Target 2030
> Fund, Wells Fargo Dow Jones Target 2035 Fund, Wells Fargo
> Dow Jones Target 2040 Fund, Wells Fargo Dow Jones Target
> 2045 Fund, Wells Fargo Dow Jones Target 2050 Fund, Wells
> Fargo Dow Jones Target 2055 Fund, and Wells Fargo Target Date
> 2060 Fund.

44.     Class certification is appropriate under Rule 23(a) because the proposed

class meets the numerosity, typicality, adequacy, and commonality requirements.

45.     Numerosity: The class is so numerous that joinder of all class

members is impracticable.  Wells Fargo invested over $3 billion of Plan assets from

thousands of individual accounts into the Wells Fargo TDFs.

46.   <u>Typicality</u>:  Plaintiff's claims are typical of the class members' claims. Like other class members, Plaintiff participated in the Plan, had his assets invested in the Wells Fargo TDFs, and suffered injuries because of Defendants' Plan mismanagement. Defendants treated Plaintiff consistently with other class members.  Defendants managed the Plan as a single entity, and therefore Defendants' imprudent and disloyal decisions affected all class members similarly.

47.   <u>Adequacy</u>:  Plaintiff will fairly and adequately protect the interests of the class.  Plaintiff's interests are aligned with the class that he seeks to represent, and he has retained counsel experienced in complex class action litigation.  Plaintiff does not have any conflicts of interest with any class members that would impair or impede her ability to represent such class members.

48.   <u>Commonality</u>:  Common questions of law and fact exist as to all class members, and predominate over any questions solely affecting individual class members, including;

   a.   Whether the Benefit Committee and its members were fiduciaries responsible for selecting, evaluating, monitoring and removing the investments of the Plan;

   b.   Whether Defendants caused the Plan to invest its assets in mutual funds offered or managed by Wells Fargo subsidiaries and affiliates, and whether such investments and fees were prudent and free of conflicts of interests;

   c.   Whether the Benefit Committee breached its fiduciary duties by selecting and failing to remove imprudent investments for the Plan that were tainted by a conflict of interests;

   d.   Whether the HR Committee and other fiduciary Defendants, including Hardison and Thornton, breached their co-fiduciary

duties under ERISA by knowingly participating in the Benefit Committee's fiduciary breaches and failing to take steps to prevent them;

e.   Whether Wells Fargo knowingly participated in the breaches of fiduciary duties, and is thus liable to disgorge fees collected from the Plan and profits earned thereon;

f.   Whether the Plan and its participants suffered losses because of the fiduciary breaches described herein; and

g.   The proper measure of monetary relief, and the proper form of injunctive and other equitable relief.

49.   Class certification is further appropriate under Rule 23(b).  As an ERISA breach of fiduciary duty action, this case is a classic 23(b)(1) class action.  Prosecution of separate actions by individual members would create the risk of (1) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the Defendants opposing the class, or (2) adjudications with respect to individual class members that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudication, or substantially impair or impede their ability to protect themselves.

50.   This action is also suitable as a class action under 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making final injunctive, declaratory, or other equitable relief appropriate with respect to the class.

51.   This action is further suitable to proceed as a class action under 23(b)(3) because questions of law and fact common to the members of the class predominate over individual questions, and this class action is superior to other available methods for

the fair and efficient adjudication of the controversy.  Given the nature of the allegations, no class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### Breach of Duties of Loyalty and Prudence Against the Benefit Committee
### (ERISA § 404, 29 U.S.C. § 1104)

52.    Plaintiff re-alleges the above paragraphs as if fully set forth herein.

53.    At all relevant times, the Benefit Committee and its members acted as fiduciaries within the meaning of ERISA section 3(21)(A), 29 U.S.C. § 1002(21)(A), by exercising authority and control with respect to the management of the Plan and the Plan's assets.

54.    As a fiduciary, the Benefit Committee was duty bound to, among other things, discharge its duties with respect to the Plan solely in the interest of the Plan participants for the exclusive purpose of providing benefits to the participants and defraying reasonable expenses in administering the Plan.  ERISA § 404(a), 29 U.S.C. § 1104(a)(1).  It was further duty bound to discharge its duties with the care, skill, prudence, and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims.  *Id.*

55.     As part of these fiduciary duties of loyalty and prudence, the Benefit Committee was required to subordinate its own interests to that of the Plan, considering

only what is in the best interests of the Plan, and to ensure that the Plan investments were prudent and not selected or retained based on a conflict of interests, and that the Plan participants pay only reasonable fees and expenses for Plan investments.

56.     These fiduciary duties are ongoing.  The Benefit Committee had a duty to periodically review Plan investments and remove any investments that were imprudent, charged excessive fees, or were tainted by a conflict of interests.

57.     The Benefit Committee breached these fiduciary duties by allowing Defendants to funnel over $3 billion in Plan assets into the Wells TDFs when, at all times, cheaper, better- performing alternatives were available.  During the entirety of the class period, the Benefit Committee failed in its duty to monitor the Plan assets and remove the imprudent Wells Fargo TDFs by, among other things, (1) failing to consider Defendants' conflict of interest, (2) putting Defendants' interests before the Plan beneficiaries, (3) failing to consider cheaper, better-performing investment alternatives, and (4) allowing Defendants to funnel Plan assets into the Wells Fargo TDFs as seed money for those inferior funds.

58.     As a direct and proximate result of these breaches of fiduciary duty, the Plan and its participants, including Plaintiff, suffered substantial losses.  Thus, pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the Benefit Committee is liable to restore all losses suffered by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT II

**Breach of Co-Fiduciary Duty Against Defendants HR Committee, Hardison, and Thornton**
**(ERISA § 405, 29 U.S.C. § 1105)**

59.     Plaintiff re-alleges the above paragraphs as if fully set forth herein.

60.     For the majority of the class period, the HR Committee and its members were named fiduciaries of the Plan, and at all relevant times had the authority to, among other things, appoint the Benefit Committee and amend the Plan.

61.     Defendants Hardison and Thornton are named fiduciaries of the Plan, with the authority to control or manage the operation and administration of the Plan.

62.     By their actions and omissions, the HR Committee, Hardison, and Thornton knowingly participated in the Benefit Committee's breaches of fiduciary duty and failed to take steps to remedy such breaches in violation of ERISA section 405(a)(1) and (3), 29 U.S.C. § 1105(a)(1) and (3).

63.     As a direct and proximate result of these breaches of fiduciary duty, the Plan and its participants, including Plaintiff, suffered substantial losses.  Thus, pursuant to ERISA section 502(a)(2), 29 U.S.C. § 1132(a)(2) and 29 U.S.C. § 1109(a), the HR Committee, Hardison, and Thornton are liable to restore all losses suffered by the 401(k) Plan caused by their breaches of fiduciary duty.

## COUNT III

**Knowing Participation in Breach of Fiduciary Duty Against Wells Fargo**
**(ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3))**

64.     Plaintiff re-alleges the above paragraphs as if fully set forth herein.

65.     At all relevant times, Wells Fargo was the Plan sponsor and a party in interest to the Plan.  Wells Fargo appointed the HR Committee, who in turn appointed members of the Benefit Committee.   Wells Fargo's senior executives were members of and controlled the HR Committee and the Benefit Committee.

66.     Wells Fargo knowingly participated in the breaches of fiduciary duty alleged herein.  Wells Fargo's senior executives, including the senior executives who were members of and controlled the Benefit Committee, directed the Benefit Committee to choose and retain the Wells Fargo TDFs as Plan investments despite there being substantially cheaper and better-performing alternative funds.  As a party in interest who knowingly participated in breaches of fiduciary duty, Wells Fargo is liable under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).

67.     As a direct and proximate result of these actions, Wells Fargo and its affiliates earned millions in fees, and the Wells Fargo TDFs received a steady influx of seed money, and thus, Wells Fargo profited immensely from its illicit conduct to the detriment of Plan participants.

68.     Thus, pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), Wells Fargo must disgorge all revenues received from the Plan and Wells Fargo's earnings thereon.

## VII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff, as the representative of the Plan and the class defined herein, prays for an order:

1.      Declaring that the Benefit Committee and its members have breached their fiduciary duties, and that Wells Fargo, the HR Committee, Hardison, and Thornton knowingly participated in said breaches;

2.      Compelling Defendants to restore all losses to the Plan arising from their ERISA violations;

3.      Requiring Defendants to disgorge all revenues received from, or in respect of, the Plan pursuant to 29 U.S.C. § 1132(a)(3) in the form of an accounting for profits, imposition of a constructive trust, and a surcharge against Defendants as necessary to effectuate said relief;

4.      Awarding equitable restitution and other appropriate equitable monetary relief against Defendants;

5.      Awarding such other equitable relief as may be appropriate, including the permanent removal of Defendants from any position of trust with respect to the 401(k) Plan, the appointment of independent fiduciaries to administer the Plan, rescission of the Plan's investments in the Wells Fargo TDFs and contracts with affiliated service providers, and an injunction forbidding Defendants from causing the Plan to invest in the Wells Fargo TDFs;

6.      Certifying this action as a class action and ordering that the Class be designated to receive the amounts restored or disgorged to the Plan by Defendants and that a constructive trust be established for distribution to the extent required by law;

7.      Enjoining Defendants from any further violations of their ERISA fiduciary duties;

8.     Awarding attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C.§ 1132(g) and/or the Common Fund doctrine; and

9.     Awarding such other and further relief as the Court deems appropriate.

Dated:  November 22, 2016          **LOCKRIDGE GRINDAL NAUEN P.L.L.P.**

By:  s/  Robert K. Shelquist
    Robert K. Shelquist, #21310X
    Rebecca A. Peterson, #392663
100 South Washington Avenue, Suite 2200
Minneapolis, MN  55401
Telephone:  (612) 339-6900
Facsimile:  (612) 339-0981
rkshelquist@locklaw.com
rapeterson@locklaw.com

Richard M. Elias (*pro hac vice* motion to be filed)
Greg G. Gutzler (*pro hac vice* motion to be filed)
Tamara M. Spicer (*pro hac vice* motion to be filed)
**ELIAS GUTZLER SPICER LLC**
130 South Bemiston Avenue, Suite 302
St. Louis, MO 63105
Telephone:  (314) 833-6645
Facsimile:  (314) 621-7607
relias@egslitigation.com
ggutzler@egslitigation.com
tspicer@egslitigation.com

Karen L. Handorf (*pro hac vice* motion to be filed)
Geoffrey Graber (*pro hac vice* motion to be filed)
**COHEN MILSTEIN**
1100 New York Ave. NW, #500
Washington, DC 20005
khandorf@cohenmilstein.com
ggraber@cohenmilstein.com

***Counsel for Plaintiff and the Proposed Class***